UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. *05- 10009- DPW* |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| BERNARD SMITH, | ) | 18 U.S.C. § 371 - Conspiracy |
| Defendant | ) | 18 U.S.C. § 542 - False Statements |
| | ) | 18 U.S.C. § 2 - Aiding and Abetting |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times material to this Indictment:

1.    The defendant, BERNARD SMITH (hereinafter referred to as "SMITH"), a resident of Massachusetts, was the President and partial owner of Stealth Components, Inc. (hereinafter referred to as "Stealth"). As President, SMITH directed the operations of Stealth and made the principal business decisions for the company.

2.    Stealth was a company incorporated in the State of Nevada, with a principal place of business in Newburyport, Massachusetts, engaged in the business of purchasing electronic components that it imported from overseas countries and then resold in the United States.

3.    "SA," an unindicted co-conspirator, was employed as a sales associate at Stealth, with responsibility for selling electronic components to Stealth's customers in the United States. In that capacity, SA negotiated with foreign suppliers in order to fill purchase orders that had been placed by Stealth's customers.

1

4.    "Mr. A," an unindicted co-conspirator, was the manager of "XYZ" Corporation, located in Hong Kong, a company engaged in the business of, among other things, exporting electronic components for resale in the United States.  XYZ Corporation maintained a bank account at the HongKong and Shanghai Banking Corporation, Ltd., located in Hong Kong.

5.    Smith, d/b/a Stealth Components, Inc., maintained a bank account at Fleet Bank (Account No. XXXXXX6390, also noted as Account No. XXXXXXXXXXX0156)(hereinafter referred to as "Stealth Fleet account"), which account SMITH controlled and from which SMITH caused payments to be made to foreign suppliers, including XYZ Corporation, for merchandise imported and entered into the commerce of the United States.

*Regulatory Background*

6.    The U.S. Customs Service (hereinafter referred to as "Customs") is responsible for enforcing the Tariff Act of 1930, as amended.  This responsibility includes the assessment and collection of all duties, fees, and taxes on merchandise imported into the United States.  Section 731 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, provides for the imposition of antidumping duties when the U.S. Department of Commerce determines that a class or kind of foreign merchandise is being sold in the United States at less than fair market value, and the International Trade Commission determines that an industry in the United States is materially injured or threatened with material injury as a result of imported merchandise.

7.    In 1993, the U.S. Department of Commerce determined that Dynamic Random Access Memory ("DRAM") imports from certain Korean companies were being sold at less than fair market value.  As a result, the U.S. Department of Commerce published final antidumping determinations, which instructed Customs to collect antidumping duties on certain Korean

2

DRAM.

8.    Companies that import qualifying Korean DRAM must deposit antidumping duties with Customs for each shipment at the time of the entry of that shipment into the United States. Antidumping duties are country and manufacturer specific and are, by statute, reviewed annually and continued or rescinded based upon that review.  The antidumping deposit is calculated as a percentage of the entry value of the DRAM.  The U.S. Department of Commerce establishes the percentage, or projected deposit which it later reviews in order to determine a final rate.  The U.S. Department of Commerce then issues an order indicating the final rate, and if this rate differs from the estimated rate paid at the time of import into the United States, then the amount of antidumping duties actually paid by the importer may be adjusted.

9.    On or about September 29, 1998, the Department of Commerce issued various orders pertaining to antidumping duty deposit rates for manufacturers of Korean DRAM, including Hyundai Electronics Industries Co., Ltd, and L.G. Semicon Co., Ltd a/k/a Goldstar. These antidumping orders remained in effect until October 13, 2000.

10.    Stealth imported Korean DRAM produced by these manufacturers during the relevant time period and thus, these imports were subject to antidumping duties.  Stealth filed Customs' entry documents for these imports indicating that these imports were subject to the antidumping duties.

11.  On numerous dates and at various times, SMITH, and others known and unknown to the Grand Jury, participated in a scheme to defraud Custom's in order to minimize the payment of antidumping duties that Stealth was required to make on imported Korean DRAM The objective of this scheme was to present false and fraudulent invoices to Customs that

3

undervalued the purchase price and falsely described Korean DRAM that Stealth imported, for the purpose of having Stealth deposit a lesser cash payment for antidumping duties. SMITH perpetrated this scheme by directing foreign suppliers to prepare fraudulent invoices and other false entry documents that would be presented to Customs at the time of entry for each shipment of DRAM that Stealth imported. Over the course of this scheme, SMITH avoided the total payment of over $385,000.00 to Customs, in antidumping duties that Stealth was required to deposit on shipments of Korean DRAMS that SMITH had caused to enter the commerce of the United States through the use of fake invoices.

## COUNT ONE
### (Conspiracy – 18 U.S.C. § 371)

12.    Paragraphs 1 through 11 are re-alleged and incorporated as if fully set forth herein.

13.    From in or about November 4, 1998 through in or about May 23, 2000, both dates being approximate and inclusive, in the District of Massachusetts and elsewhere, defendant

### BERNARD SMITH,

together with others known and unknown to the Grand Jury, knowingly, wilfully and unlawfully combined, conspired and agreed with each other to enter into the commerce of the United States imported merchandise, specifically Korean DRAM from overseas, by means of fraudulent practices, false statements, false invoices and declarations, in violation of 18 U.S.C. § 542.

## MANNER AND MEANS OF THE CONSPIRACY

Among the means and methods by which the co-conspirators carried out the conspiracy were the following:

14.    As part of the conspiracy and in order to further its objectives, the defendant

4

BERNARD SMITH, together with others known and unknown to the Grand Jury, doing business as and on behalf of Stealth, entered into an agreement with Mr. A, whereby Mr. A would cause XYZ Corporation to enter into the commerce of the United States Korean DRAM, through the use of false and fraudulent manifests, invoices and documents submitted to Customs, for the specific purpose of reducing the amount of antidumping duty that Stealth was required to deposit at the time of entry on DRAM that was shipped to it from Mr. A.

15. It was further part of the conspiracy that SMITH directed SA to annotate purchase order forms submitted to XYZ Corporation, to specifically request that DRAMs ordered be undervalued and falsely described in invoices presented to Customs at the time of entry.

16. It was further part of the conspiracy that on numerous occasions and at various times, SMITH and SA would send to Mr. A in Hong Kong, via facsimile, purchase order forms that had been prepared at Stealth in Massachusetts, specifically requesting that DRAMs to be imported be undervalued and falsely described in invoices to be presented and filed with Customs at time of entry of Korean DRAMS shipped from XYZ Corporation.

17. It was further part of the conspiracy that after receipt from SMITH or SA, of the purchase orders specifically requesting that DRAMs ordered be undervalued, Mr. A caused fraudulent invoices prepared at XYZ Corporation in order to accompany the shipment of DRAMs ordered by Stealth, which fraudulent invoices were to be presented to Customs at the time the DRAMs entered the commerce of the United States.

18. It was further part of the conspiracy that in addition to the fraudulent invoices that were fabricated, Mr. A also caused to be prepared true and accurate invoices noting the correct description and purchase price for the Korean DRAM imported by Stealth, which were provided

5

to SMITH from Hong Kong via facsimile, and upon said invoices, SMITH made full payment to XYZ Corporation for the true value of the Korean DRAM purchased and imported into the United States.

19.    It was further part of the conspiracy that on numerous occasions and at various times, upon receipt of true and accurate invoices from XYZ Corporation via facsimile, SMITH caused full payment to be made by wire transfer of funds from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong.

20.    It was further part of the conspiracy that from on or about November 4, 1998 through in or about May 25, 2000, SMITH engaged in a scheme whereby on various dates and on numerous occasions, he caused the filing of false and fraudulent invoices and entry documents on Korean DRAM that was imported to the United States, and fraudulently represented the value of such goods imported to be a total of approximately $1,295,771.00, when in fact, the true and accurate value and purchase price paid for the merchandise was approximately $6,729,781.00, significantly higher than the false value SMITH caused to be presented and filed with Customs at time of entry.

21.    It was further part of the conspiracy that in executing the scheme described above, that SMITH, with the aid of his co-conspirators, known and unknown to the grand jury, avoided the cash payment of the antidumping duties that he was required to deposit, causing a total loss of approximately $385,693.74.

## OVERT ACTS

22.    In furtherance of the conspiracy and to accomplish its objectives, the defendant committed, or caused to be committed, among others, at least one of the following overt acts:

6

a.    On or about November 4, 1998, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5191314-2, which invoice falsely stated the value of the items shipped as $5,100.00, when in fact the true value of the DRAM imported through that Entry Number was $62,900.00.

b.    On or about January 19, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6846703-3, which invoice falsely stated the value of the items shipped as $12,000.00, when in fact the true value of the DRAM imported through that Entry Number was $78,400.00.

c.    On or about March 13, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6891094-1, which invoice falsely stated the value of the items shipped as $12,752.00, when in fact the true value of the DRAM imported through that Entry Number was $85,948.48.

d.    On or about March 18, 1999, SMITH caused an $85,948.48 wire transfer to be sent from Stealth's Fleet Bank account to XYZ Corporation's bank account located in Hong Kong, which amount corresponded exactly with the amount paid for DRAM ordered by Stealth.

e.    On or about April 7, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6912634-9, which invoice falsely stated the value of the items shipped as $12,000.00, when in fact the true value of the DRAM imported through that Entry

7

Number was $86,000.00.

f.    On or about May 12, 1999, SMITH caused a Purchase Order Confirmation, No. 2084 to be sent from Stealth to Mr. A in Hong Kong, via facsimile, in which SMITH requested that Mr. A generate a fraudulent invoice whereby DRAM ordered by Stealth would be undervalued to $0.20 per unit price, significantly less than the true values of $2.57, $1.50, $12.85 per unit price for the different DRAMS described in the purchase order.

g.    On or about May 17, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6947780-9, which invoice falsely stated the value of the items shipped as $12,000.00, when in fact the true value of the DRAM imported through that Entry Number was $136,800.00.

h.    On or about May 28, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6013316-1, which invoice falsely stated the value of the items shipped as $3,648.00.00, when in fact the true value of the DRAM imported through that Entry Number was $41,136.00.

i.    On or about June 1, 1999, SMITH caused a $41,136.00 wire transfer to be made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about May 28, 1999 through Entry Number 110-6013316-1.

j.    On or about May 29, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to

8

Customs in Entry Number 110-6961511-9, which invoice falsely stated the value of the items shipped as $23,364.00, when in fact the true value of the DRAM imported through that Entry Number was $209,178.40.

k.    On or about June 17, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6966110-5, which invoice falsely stated the value of the items shipped as $33,800.00, when in fact the true value of the DRAM imported through that Entry Number was $261,680.00.

l.    On or about August 21, 1999, SMITH caused a Purchase Order Confirmation, No. 3093 - to be sent from Stealth to Mr. A in Hong Kong, via facsimile, in which SMITH specifically requested that Mr. A fabricate a phony invoice in which 16,000 pieces of DRAM ordered by Stealth would be undervalued to $0.32 per unit price, significantly less than its true value of $2.65 per unit price.

m.    On or about August 27, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6033820-8, which invoice falsely stated the value of the items shipped as $9,280.00, when in fact the true value of the DRAM imported through that Entry Number was $95,120.00.

n.    On or about September 6, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6035846-1, which invoice falsely stated the value of the items shipped as $3,000.00, when in fact the true value of the DRAM imported through that Entry

Number was $82,100.00.

      o.   On or about September 7, 1999, SMITH caused a $82,100.00 wire transfer to be made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about September 6, 1999, through Entry Number 110-6035846-1.

      p.   On or about September 23, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-7076280-1, which invoice falsely stated the value of the items shipped as $18,000.00, when in fact the true value of the DRAM imported through that Entry Number was $174,900.00.

      q.   On or about November 17, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-8404397-4, which invoice falsely stated the value of the items shipped as $13,900.00, when in fact the true value of the DRAM imported through that Entry Number was $139,910.00.

      r.   On or about December 15, 1999, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5855723-1, which invoice falsely stated the value of the items shipped as $9,000.00, when in fact the true value of the DRAM imported through that Entry Number was $79,500.00.

      s.   On or about December 16, 1999 SMITH caused a $79,500.00 wire transfer to be

made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about December 15, 1999, through Entry Number 110-5855723-1.

t.  On or about January 18, 2000, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-8461911-2, which invoice falsely stated the value of the items shipped as $2,700.00, when in fact the true value of the DRAM imported through that Entry Number was $15,480.00.

u.  On or about January 19, 2000, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-6066282-1, which invoice falsely stated the value of the items shipped as $1,400.00, when in fact the true value of the DRAM imported through that Entry Number was $10,280.00.

v.  On or about February 2, 2000, SMITH caused a $153,000.00 wire transfer to be made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about February 3, 2000, through Entry Number 110-5867099-2.

w.  On or about February 3, 2000, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5867099-2, which invoice falsely stated the value of the items

11

shipped as $5,950.00, when in fact the true value of the DRAM imported through that Entry Number was $153,000.00.

    x.    On or about February 16, 2000, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5870660-6, which invoice falsely stated the value of the items shipped as $7,350.00, when in fact the true value of the DRAM imported through that Entry Number was $51,500.00.

    y.    On or about March 2, 2000, SMITH caused Korean DRAM to be entered into the commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5874982-0, which invoice falsely stated the value of the items shipped as $8,750.00, when in fact the true value of the DRAM imported through that Entry Number was $59,500.00.

    z.    On or about March 3, 2000, SMITH caused a $59,500.00  wire transfer to be made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about March 2, 2000, through Entry Number 110-5874982-0.

    aa.    On or about May 19, 2000, SA sent a Purchase Order Confirmation, No. 4496 to Mr. A, via facsimile from Newburyport, Massachusetts to Hong Kong, in which SA requested Mr. A  to  undervalue the price of DRAM ordered to $1.50 per unit, when in fact the true value was $2.65 per unit, for the purpose of presenting a fraudulent invoice to Customs at time of entry for the DRAM imported.

    bb.    On or about May 23, 2000, SMITH caused Korean DRAM to be entered into the

commerce of the United States, through the use of a false and fraudulent invoice presented to Customs in Entry Number 110-5897451-9, which invoice falsely stated the value of the items imported as $18,000.00, when in fact the true value of the DRAM imported through that Entry Number was $31,800.00.

cc.    On or about May 24, 2000, SMITH caused a $31,800.00 wire transfer to be made from Stealth's Fleet account to XYZ Corporation's bank account in Hong Kong, which amount corresponded exactly to the amount paid for DRAM Stealth ordered that entered the commerce of the United States on or about May 23, 2000 through Entry Number 110-5897451-9.

All in violation of Title 18, United States Code, Sections 371 and 2.

13

## COUNTS TWO through SEVEN
### (False Statements - 18 U.S.C. § 542)

The Grand Jury further charges that:

23.    Paragraphs 1 through 11, and 14 through 22 are realleged and incorporated as if fully set forth herein.

24.    On or about the dates set forth below, in the District of Massachusetts and elsewhere,

### BERNARD SMITH

the defendant herein, willfully and knowingly did enter and introduce, and attempt to enter and introduce, into the commerce of the United States, imported merchandise, consisting of electronic components referred to as Dynamic Random Access Memory ("DRAM"), by means of false statements and by means of false and fraudulent invoices, declarations, affidavits and certain other papers, to wit, Customs Consumption Entries, said statements, invoices, declarations, affidavits and paper being hereinafter described by "Entry Number" and "Date of Entry," which said documents were false and fraudulent in that the stated value of the merchandise purchased was significantly less than the true value paid for said merchandise, as specified below:

| COUNT | DATE OF ENTRY APPROX. | ENTRY NUMBER | FALSE VALUE | TRUE VALUE |
|-------|-----------------------|--------------|-------------|------------|
| 2 | 01/18/00 | 110-8461911-2 | $ 2,700.00 | $ 15,480.00 |
| 3 | 01/19/00 | 110-6066282-1 | 1,400.00 | 10,280.00 |
| 4 | 02/03/00 | 110-5867099-2 | 5,950.00 | 153,000.00 |
| 5 | 02/16/00 | 110-5870660-6 | 7,350.00 | 51,500.00 |

14

| | | | | |
|---|---|---|---|---|
| 6 | 03/02/00 | 110-5874982-0 | 8,750.00 | 59,500.00 |
| 7 | 05/23/00 | 110-5897451-9 | 18,000.00 | 31,800.00 |

All in violation of Title 18, United States Code, Section 542 and 2.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

Carmen M. Ortiz
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS          January 13, 2005

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK          12:01 P.

16

JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                          **U.S. District Court - District of Massachusetts**

Place of Offense: __Massachusetts__    Category No. __I__    Investigating Agency __HOMELAND SECURITY__

City __Newburyport__                **Related Case Information:**

County __Essex__                    Superseding Ind./ Inf. _____    Case No. _____
                                    Same Defendant _____    New Defendant _____
                                    Magistrate Judge Case Number _____
                                    Search Warrant Case Number __2001M0448 RBC__
                                    R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Bernard Smith__                    Juvenile    ☐ Yes    ☒ No

Alias Name _____

Address __28 Winterberry Lane    Stratham, NH 03885__

Birth date (Year only): __1972__ SSN (last 4 #): __5525__ Sex __M__ Race: __White__    Nationality: _____

**Defense Counsel if known:**    __Max Stern__    Address: __90 Canal Street__
                                                          __Boston, MA 02114__
**Bar Number:** _____

**U.S. Attorney Information:**

AUSA __Carmen M. Ortiz__                    Bar Number if applicable __380390__

Interpreter:    ☐ Yes ☒ No        List language and/or dialect: _____

Matter to be SEALED:    ☐ Yes    ☒ No

        ☐ Warrant Requested    ☒ Regular Process    ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ On Pretrial Release:    Ordered by _____ on _____

**Charging Document:**    ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**    ☐ Petty _____    ☐ Misdemeanor _____    ☒ 7 Felony _____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  **January 13, 2005**        Signature of AUSA:  *Carmen M. Ortiz*

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**    Bernard Smith _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 371 | Conspiracy | 1 |
| Set 2  18 U.S.C. § 542 | Entry of Goods by Means of False Statements | 2 - 7 |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**