FILED
Clerk's Office
USDC, Mass
Date _____
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
v.                           )     CRIMINAL NO. 05-10009-DPW
                             )
BERNARD SMITH                )
                             )

## DEFENDANT'S SUPPLEMENTARY SENTENCING MEMORANDUM

This memorandum is filed to respond to one argument in the government's Sentencing
Memorandum and to bring two matters to the Court's attention which are material to the
appropriate sentence.

1. <u>Admissions by defendant at Rule 11 hearing</u>

In its Sentencing Memorandum, at pp. 5 and 9, the government argues that the defendant
made admissions at the change of plea hearing which support its allegation that he had a
supervisory role, since the "only objection" he articulated was to the loss amount. <u>Id</u> . at 5, n.8.
The defendant made no such admissions. Counsel summarized the extent of defendant's
admission:

> So, the bottom line here is that he admits to
> having caused the entry of merchandise by means of false
> statements and conspired to having done so and further
> to do that in order to avoid paying a deposit rate.

Tr. p. 19. And the Court, addressing defendant directly, confirmed the scope of his admission:

> **Q.**     Now, Mr. Smith, you've heard what Ms. Ortiz says
> and you've heard the way in which Mr. Stern has reframed
> the issue a bit. Two things I want to know: Did you do
> the things that Ms. Ortiz said you did?
>
> **A.**     Yes.

> **Q.**     And you did them in connection with and in concert
> with other individuals like Mr. Lu and Mr. Jacobs?
>
> **A.**     Yes.

Id. 18-19. Manifestly, to conspire with, or act in connection with, or act in concert with a another person is not the equivalent of acting as that person's manager or supervisor. To be sure, counsel did, as the Court observed, choose to "preview[]" the loss amount argument. Id. 19. But the fact that counsel did not also at that time choose to preview the issue of role in the offense is beside the point. As the Court noted, defendant he was required to admit only the elements of the offense. Id. 18.

### 2. Publication of Defendant's Indictment and Plea

As noted in defendant's Sentencing Memorandum, this prosecution is well-known in the industry. Exhibit A, hereto, contains copies of the weekly email newsletter of the Electronic Resellers Association International, Inc., which is the association of electronic component brokers. On January 20 and on May 19, 2005 the newsletter prominently displayed the press releases of the United States Attorney announcing defendant's indictment and plea. Also found in Exhibit A is the announcement of the indictment on the U.S. Immigration and Customs Enforcement website.

### 3. Treatment of similarly situated persons

As noted in our prior memorandum, one objective of the sentencing statute is to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a) (6). Attached as Exhibit B is Table 13 of the U.S. Sentencing Commission, 2003 Datafile (the most recent year for which these statistics are

available). This table depicts the average sentence length for each primary offense category. The table does not show a category of importing violations. But it does show the sentencing for all tax violations, i.e. defendants sentenced under the 2T4.1 tax table. The table shows that 50% of all such defendants were sentenced to 8 months or less (Median months). As we have shown in the prior memorandum, defendant's offense is actually of a lesser gravity than the typical tax offense, since in a tax case the rate is established at the time of the offender's crime. This defendant, however, while he intentionally evaded a deposit, did not intend to evade the final duty. In this light, the sentence requested by defendant is well within the range of sentences for similar crimes.

Respectfully submitted,

Max D. Stern
BBO No. 479560
Kenneth Resnik
BBO No. 637527
Stern, Shapiro, Weissberg
& Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800

Dated:  October 20, 2005.

-3-

A



# Thursday's ERAI News

**January 20, 2005**



## Important Announcements

### Vegas 2005

Due to the inability to obtain the necessary sponsorship this year, the ERAI will not be hosting the Industry Party in Las Vegas on Saturday Night as we have in years past. As such, instead of the Executive Conference that is usually held on Saturday morning, we are looking into preparing four separate conferences that will be held at various times throughout the coming year in several different strategic locations. While we have enjoyed offering the Industry these events in Las Vegas over the past several years, we believe a change of venue will be a more productive and positive change. We are certain that there will be others who will take the "bull by the horns" in order to organize an event. We will announce all scheduled events as they are reported to us.

### ERAI MEMBERSHIP CERTIFICATES

Effective January 1, 2005, at the request of our Members, the ERAI will begin issuing ERAI Membership Certificates to all Members, which will include the official ERAI raised, embossed seal and an original signature. An increasing number of Members have requested certificates since they use their Membership status to aid them in opening New Accounts with preferred customers. Your certificate will be issued when your Membership renews and will be active for a period of 1 year. New certificates will be issued annually. So, if your ERAI Membership renews in July, you will receive your certificate in July. If your Membership renews in February, you will receive your certificate in February. Certificates will now be issued every year as you renew your ERAI Membership. If you find yourself in a situation needing a certificate prior to your renewal date, please contact Ginny Rich in ERAI Membership Services via email and she will work to assist you - **Ginny@erai.com**.

Resolve Hopeless Or Difficult Situations
Without Spending Thousands Of Dollars
In Legal Fees

E.R.A.I.
SMALL CLAIMS ARBITRATION
239-261-6268

### Inside this issue:

| | |
|---|---|
| *Important Announcements* | *1* |
| *Stolen Parts* | *2* |
| *Distributor Indicted* | *3* |
| *Wire Fraud* | *5* |
| *Faulty Product* | *7* |
| *Past Due Invoices* | *8* |
| *Previously Reported* | *9* |



**Phone: (508) 746-8475**
**Fax: (508) 746-8940**
**WWW.ERAI.COM**

# 🌐 Thursday's ERAI News

## Stolen Parts



### *MEMBER SEEKS ASSISTANCE LOCATING STOLEN PARTS* | **HY5DU643222AQ-5**

**Part Number:** HY5DU643222AQ-5 / **Mfg:** Hynix / **Qty**: 65,000 pieces
**Description:** 2MX32DDR / **Date Code:** 02
**Batch Code #:** 103764

A Member is asking for your assistance in locating a shipment of stolen Hynix Semiconductor parts. The parts were picked up by Yellow Freight Forwarders from a company in San Jose, California to be shipped to the Member's warehouse on January 18, 2005. The shipment consisted of 18 boxes and was stolen from the Yellow Freight truck when it made a rest stop.  A police report has been filed with the Milpitas California Police Department.  Please contact the ERAI if you have any information pertaining to this material.



WANT TO TRADE SAFELY?

eraiESCROW

Protect yourself

We wont be beat!!

eraiEscrow will beat any competitor's price
on an escrow transaction.

www.eraiESCROW.com

There are other escrow services - There is only
ONE eraiEscrow!

STOLEN PARTS

 **Thursday's ERAI News**

## Distributor Indicted

*PRESS RELEASE ISSUED BY THE UNITED STATES DEPARTMENT OF JUSTICE*

Dear Members,

The following Press Release was issued by the United States Department of Justice on January 14, 2005 involving the troubles facing an Independent Distributor known by many in our community. We are sharing this information with you today for the sole purpose of informing you of the seriousness and importance of properly documenting all incoming international shipments. We know that most of you are trading internationally; we fear some of you may not understand the significance of properly declaring values on incoming and outgoing shipments. While Bernard Smith of Stealth Components has been indicted, he has not been found guilty of the charges that have been filed against him. We will follow this case and will report the courts ruling once it has been rendered. As we begin a new year, we hope that you will take the time to review your importation processes to ensure you are complying with all applicable government rules and regulations as they apply to your region.

January 14, 2005

| | |
|---|---|
| **United States Department of Justice**<br>***Michael J. Sullivan***<br>U.S. Attorney<br>District of Massachusetts | *United States Attorney's Office*<br>*John Joseph Moakley U.S. Courthouse*<br>*1 Courthouse Way, Suite 9200*<br>*Boston, MA 02210*<br>*Press Office: (617) 748-3139* |

PRESS RELEASE

### PRESIDENT AND OWNER OF FORMER MASSACHUSETTS COMPANY INDICTED

Boston, MA... The President and part owner of Stealth Components, Inc., of New Hampshire, formerly based in Newburyport, Massachusetts, was indicted yesterday in connection with a scheme to avoid paying over $385,000 in U.S. Customs import duties.

United States Attorney Michael J. Sullivan and Robin M. Avers, Special Agent in Charge of the Immigration and Customs Enforcement in New England, announced that BERNARD SMITH, age 33, of 28 Winterberry Lane, Stratham, New Hampshire, was charged in a seven-count indictment with Conspiracy and False Statements.

According to the indictment, Stealth Components, Inc. ("Stealth"), is in the business of purchasing electronic components that it imports from overseas countries for resale in the United States. At the time of the alleged offenses, Stealth was located in Newburyport, Massachusetts.

It is alleged that from November of 1998 through May of 2000, SMITH and others participated in a scheme to defraud U.S. Custom's in order to minimize the payment of antidumping duties that Stealth was required to make on imported Korean Dynamic Random Access Memory ("DRAM"). In 1993, the U.S. Department of Commerce determined that DRAM imports from certain Korean companies were being sold at less than fair market value. As a result, the U.S. Department of Commerce instructed Customs to collect antidumping duties on certain Korean DRAM. Thereafter companies that imported qualifying Korean DRAM were required to deposit antidumping duties with Customs for each shipment at the time of its entry into the United States.

The alleged scheme involved the presentation of false and fraudulent invoices to Customs that undervalued the purchase price and falsely described the Korean DRAM that Stealth imported in order to lessen the cash payment amount for antidumping duties that Stealth was required to make to Customs.

*Continued on the next page)*



**DISTRIBUTOR INDICTED**

## Thursday's ERAI News

### Distributor Indicted (Continued)

According to the indictment, SMITH perpetrated this scheme by directing foreign suppliers to prepare fraudulent invoices and other false entry documents that would be presented to Customs at the time of entry for each shipment of DRAM that Stealth imported. Over the course of this scheme, it is alleged that SMITH avoided the total payment of over $385,000 to Customs in antidumping duties that Stealth was required to deposit on shipments of Korean DRAMS.

SMITH will be summonsed into court for an initial appearance before U.S. Magistrate Judge Robert B. Collings scheduled for January 25, 2005 at 3:15 p.m. If convicted, SMITH faces a maximum sentence of 5 years in prison on the Conspiracy charge, and 2 years in prison on each of the six False Statements charges.

The case was investigated by Special Agents with Immigration and Customs Enforcement. It is being prosecuted by Assistant U.S. Attorney Carmen M. Ortiz in Sullivan's Economic Crimes Unit.

**The details contained in the indictment are allegations. The defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt in a court of law.**

Press Contact: Samantha Martin, (617) 748-3139



**WANT TO TRADE SAFELY?**
Protect yourself
Do not TT in Advance
**www.eraiESCROW.com**

DISTRIBUTOR INDICTED



# Thursday's ERAI News

May 19, 2005



**HI-TECH PARTS, LLC**

**erai Escrow**

## Indictment

In January 2005, ERAI informed you in our weekly Broadcast that the President and part owner of Stealth Components, Inc., of New Hampshire, formerly based in Newburyport, Massachusetts, was indicted in connection with a scheme to avoid paying over \$385,000 in U.S. Customs import duties. It was announced on Friday, May 12th Bernard Smith plead guilty to these charges and that he is now awaiting sentencing.

| **United States Department of Justice** | *United States Attorney's Office* |
|---|---|
| ***Michael J. Sullivan*** | *John Joseph Moakley U.S. Courthouse* |
| U.S. Attorney | *1 Courthouse Way, Suite 9200* |
| District of Massachusetts | *Boston, MA 02210* |
| | *Press Office: (617) 748-3139* |

May 12, 2005

PRESS RELEASE

### PRESIDENT AND OWNER OF FORMER MASSACHUSETTS COMPANY CONVICTED OF CONSPIRACY AND MAKING FALSE STATEMENTS

Boston, MA... The President and part owner of Stealth Components, Inc., of New Hampshire, formerly based in Newburyport, Massachusetts, pleaded guilty yesterday in federal court in connection with a scheme to avoid paying over \$385,000 in U.S. Customs import duties.

United States Attorney Michael J. Sullivan and Robin M. Avers, Special Agent in Charge of the Immigration and Customs Enforcement in New England, announced that BERNARD SMITH, age 33, of 28 Winterberry Lane, Stratham, New Hampshire, pleaded guilty before U.S. District Judge Douglas P. Woodlock to a seven-count Indictment charging him with Conspiracy and False Statements.

At yesterday's plea hearing, the prosecutor told the Court that, had the case proceeded to trial, the evidence would have proven that Stealth Components, Inc. ("Stealth"), is in the business of purchasing electronic components that it imports from overseas countries for resale in the United States. At the time of the offenses, Stealth was located in Newburyport, Massachusetts.

Yesterday SMITH admitted that from November of 1998 through May of 2000, he and others participated in a scheme to defraud U.S. Custom's in order to minimize the payment of antidumping duties that Stealth was required to make on imported Korean Dynamic Random Access Memory ("DRAM"). In 1993, the U.S. Department of Commerce determined that DRAM imports from certain Korean companies were being sold at less than fair market value. As a result, the U.S. Department of Commerce instructed Customs to collect antidumping duties on certain Korean DRAM. Thereafter companies that imported qualifying Korean DRAM were required to deposit antidumping duties with Customs for each shipment at the time of its entry into the United States.

### Inside this issue:

| | |
|---|---|
| *Indictment* | *1* |
| *Member Question* | *3* |
| *Member Tip* | *4* |
| *Legal Investigation* | *6* |
| *Faulty Product* | *7* |
| *NSF Checks* | *9* |
| *Past Due Invoices* | *10* |
| *Previously Reported* | *11* |
| *Bankruptcy Notification* | *12* |
| *Misuse Of ERAI Logo* | *13* |



**Phone: (508) 746-8475**
**Fax: (508) 746-8940**
**WWW.ERAI.COM**

 **Thursday's ERAI News**

## Indictment (Continued)

The scheme involved the presentation of false and fraudulent invoices to Customs that undervalued the purchase price and falsely described the Korean DRAM that Stealth imported in order to lessen the cash payment amount for antidumping duties that Stealth was required to make to Customs.

SMITH perpetrated this scheme by directing foreign suppliers to prepare fraudulent invoices and other false entry documents that would be presented to Customs at the time of entry for each shipment of DRAM that Stealth imported. Over the course of this scheme, SMITH avoided the total payment of over $385,000 to Customs in antidumping duties that Stealth was required to deposit on shipments of Korean DRAMS.

Judge Woodlock scheduled sentencing for September 8, 2005 at 3:30 p.m. SMITH faces a maximum sentence of 5 years in prison on the Conspiracy charge, and 2 years in prison on each of the six False Statements charges.

The case was investigated by Special Agents with Immigration and Customs Enforcement. It is being prosecuted by Assistant U.S. Attorney Carmen M. Ortiz in Sullivan's Economic Crimes Unit.

Press Contact: Samantha Martin, (617) 748-3139



**INDICTMENT**

[Skip Navigation] [Text & Graphics] **[Home]** [Search & Site Map]

**News Release**

**January 14, 2005**

# PRESIDENT AND PART-OWNER OF MASSACHUSETTS COMPANY INDICTED FOR AVOIDING ANTI-DUMPING IMPORT DUTIES
## *Alleged to have orchestrated scheme in bringing Korean computer memory into U.S.*

BOSTON—The president and part owner of Stealth Components, Inc., of New Hampshire, formerly based in Newburyport, Mass., was indicted Thursday in connection with a scheme to avoid paying more than $385,000 in customs import duties.

United States Attorney Michael J. Sullivan and U.S. Immigration and Customs Enforcement Special Agent-in-Charge Robin M. Avers announced that 33-year-old Bernard Smith, of 28 Winterberry Lane, Stratham, New Hampshire, was charged in a seven-count indictment with Conspiracy and False Statements.

According to the indictment, Stealth Components, Inc. ("Stealth"), is in the business of purchasing electronic components that it imports from overseas countries for resale in the United States. At the time of the alleged offenses, Stealth was located in Newburyport.

It is alleged that from November of 1998 through May of 2000, Smith and others participated in a scheme to defraud U.S. Customs and Border Protection in order to minimize the payment of antidumping duties that Stealth was required to make on imported Korean-made Dynamic Random Access Memory ("DRAM").

In 1993, the U.S. Department of Commerce determined that DRAM imports from certain Korean companies were being sold at less than fair market value. As a result, the U.S. Department of Commerce instructed Customs and Border Protection (then known at the time as the "U.S. Customs Service") to collect antidumping duties on certain Korean DRAM. Thereafter, companies that imported qualifying Korean DRAM were required to deposit antidumping duties with Customs and Border Protection for each shipment at the time of its entry into the United States.

The alleged scheme involved the presentation of false and fraudulent invoices to Customs and Border Protection that undervalued the purchase price and falsely described the Korean DRAM that Stealth imported in order to lessen the cash payment amount for antidumping duties that Stealth was required to make.

According to the indictment, Smith perpetrated this scheme by directing foreign suppliers to prepare fraudulent invoices and other false entry documents that would be presented to Customs and Border Protection at the time of entry for each shipment of DRAM that Stealth imported. Over the course of this scheme, it is alleged that Smith avoided the total payment of over $385,000 in antidumping duties that Stealth was required to deposit on shipments of Korean DRAMS.

Smith will have an initial appearance before U.S. Magistrate Judge Robert B. Collings at 3:15 p.m. Jan. 25. If convicted, Smith faces a maximum sentence of five years in prison on the

Conspiracy charge, and two years in prison on each of the six False Statements charges.

The case was investigated by special agents of U.S. Immigration and Customs Enforcement. It is being prosecuted by Assistant U.S. Attorney Carmen M. Ortiz in Sullivan's Economic Crimes Unit.

The details contained in the indictment are allegations. The defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt in a court of law.

# ICE #

U.S. Immigration and Customs Enforcement is the largest investigative arm of the Department of Homeland Security.

ABOUT | NEWS ROOM | CAREERS
Home | Text | Site Map | Search | Legal | Firstgov | DHS

**B**

## Table 13

### AVERAGE SENTENCE LENGTH IN EACH PRIMARY OFFENSE CATEGORY[1]
### Fiscal Year 2003

| PRIMARY OFFENSE | Mean Months | Median Months | Number |
|---|---|---|---|
| TOTAL | 47.9 | 24.0 | 69,322 |
| Murder | 247.5 | 180.0 | 80 |
| Manslaughter | 33.0 | 21.0 | 48 |
| Kidnapping/Hostage Taking | 160.1 | 120.0 | 59 |
| Sexual Abuse | 73.0 | 41.0 | 271 |
| Assault | 30.4 | 15.0 | 541 |
| Robbery | 101.7 | 71.0 | 1,532 |
| Arson | 87.2 | 60.0 | 82 |
| Drugs - Trafficking | 76.9 | 57.0 | 24,791 |
| Drugs - Communication Facility | 40.8 | 48.0 | 391 |
| Drugs - Simple Possession | 4.7 | 2.0 | 1,211 |
| Firearms | 70.0 | 43.0 | 6,766 |
| Burglary/B&E | 24.7 | 24.0 | 51 |
| Auto Theft | 60.8 | 21.0 | 142 |
| Larceny | 8.3 | 4.0 | 2,356 |
| Fraud | 14.4 | 8.0 | 7,429 |
| Embezzlement | 6.5 | 3.0 | 760 |
| Forgery/Counterfeiting | 12.7 | 9.0 | 1,262 |
| Bribery | 9.7 | 6.0 | 169 |
| Tax | 12.3 | 8.0 | 485 |
| Money Laundering | 45.3 | 24.0 | 826 |
| Racketeering/Extortion | 71.6 | 40.0 | 816 |
| Gambling/Lottery | 6.8 | 6.0 | 90 |
| Civil Rights | 39.4 | 13.5 | 66 |
| Immigration | 22.6 | 18.0 | 14,959 |
| Pornography/Prostitution | 63.5 | 33.0 | 799 |
| Prison Offenses | 17.1 | 12.0 | 369 |
| Administration of Justice Offenses | 15.7 | 8.0 | 1,042 |
| Environmental/Wildlife | 4.9 | 0.0 | 143 |
| National Defense | 75.6 | 30.0 | 21 |
| Antitrust | 7.2 | 4.0 | 12 |
| Food & Drug | 13.0 | 0.0 | 78 |
| Other Miscellaneous Offenses | 7.2 | 0.0 | 1,675 |

[1] Of 70,258 cases, 936 were excluded due to one or both of the following reasons: missing primary offense (578) or missing or indeterminable sentencing information (503). Sentences of probation only are included in this table as zero months of imprisonment. In addition, the information presented in this table includes time of confinement as defined in USSG §5C1.1. Descriptions of variables used in this table are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 2003 Datafile, USSCFY03